## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                              )

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE | ) |
| 1875 Eye Street, N.W., Suite 800 | ) |
| Washington, D.C. 20006, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|     v. | )       Civil Action No. 16-2145 |
| | ) |
| JOHN F. KERRY, | ) |
| in his official capacity as | ) |
| Secretary of State of the United States | ) |
| United States Department of State | ) |
| 2201 C Street, N.W. | ) |
| Washington, D.C. 20520, | ) |
| | ) |
|      and | ) |
| | ) |
| DAVID S. FERRIERO, | ) |
| in his official capacity as | ) |
| Archivist of the United States | ) |
| National Archives and Records Administration | ) |
| 8601 Adelphi Road | ) |
| College Park, MD 20740 | ) |
| | ) |
|        Defendants. | ) |

_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Federal Records Act, 44 U.S.C. §§ 2101 *et seq*., §§ 2901 *et seq.*, §§ 3101 *et seq.*, 3301 *et seq*.; the Administrative Procedure Act, 5 U.S.C. chs. 5, 7; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.  CoA Institute seeks a declaration that Defendants John F. Kerry and David S. Ferriero, in their official capacities as Secretary of State and Archivist of the United States, respectively, violated the Federal Records Act ("FRA") by failing to initiate action through the

United States Attorney General for the recovery of federal records unlawfully removed by former Secretary of State Colin Powell from the custody of the United States Department of State ("State Department"). CoA Institute also seeks an injunction to compel Defendants Kerry and Ferriero to carry out their nondiscretionary statutory obligations to initiate action through the Attorney General for the recovery of the federal records unlawfully removed by Secretary Powell and to notify Congress of the same.

## NATURE OF THE ACTION

2.      The federal records at issue are work-related email created and received by Secretary Powell on a personal email account during his tenure at the State Department from January 20, 2001 to January 26, 2005. Upon information and belief, those email records have never been turned over or returned to the possession, custody, or control of the State Department.

3.      On September 8, 2016, at a hearing held by the U.S. House of Representatives Committee on Oversight and Government Reform, State Department Under Secretary for Management Patrick F. Kennedy acknowledged the existence of and testified about State Department efforts to recover email records from Secretary Powell's personal email account. *See* U.S. H.R. Comm. on Oversight & Gov't Reform, Hearing Notice & Summary, "Examining FOIA Compliance at the Department of State" (Sept. 8, 2016), http://coainst.org/2bYqj9J. Consistent with previous findings by the State Department Office of Inspector General and notwithstanding applicable FRA requirements, regulations promulgated by the National Archives and Records Administration ("NARA"), and long-standing State Department policies, Under Secretary Kennedy stated that the State Department had failed to store, retrieve, or recover the email records that Secretary Powell had created and received on his personal email account. *See* Ex. 1 (partial transcript of hearing; video of hearing *available at* http://bit.ly/2dOOAzH); *see*

2

*also* U.S. Dep't of State Office of Inspector Gen., Office of the Secretary: Evaluation of Email Records Management and Cybersecurity Requirements 21–22 (May 2016), *available at* http://bit.ly/2dfG36F [hereinafter "State OIG Report"] (discussing State Department failure to "take any specific measures to preserve Federal records in [Secretary Powell's] email account").

4.       During his testimony, which was provided under oath, Under Secretary Kennedy acknowledged that the State Department had sent two letters to Secretary Powell's representative requesting cooperation in retrieving the email records in question.  *See* Ex. 1; *see also* Exs. 2–3 (State Department letters to Secretary Powell's representative, Peggy Cifrino).  Under Secretary Kennedy also explained, however, that Secretary Powell failed to provide the State Department with copies of his work-related email records and, to date, had not contacted his internet service or email provider to retrieve or recover those records.  *See* Ex. 1; *see also* Ex. 4 at 4 (letter from Under Secretary Kennedy to NARA stating that, although the State Department had asked Secretary Powell to contact his internet service or email provider directly, "[t]he Department has not as yet received a response [from Secretary Powell.]").

5.       Other than seeking Secretary Powell's cooperation, Under Secretary Kennedy testified that the State Department had not taken further steps to retrieve or recover Secretary Powell's work-related email records and that the agency never directly contacted Secretary Powell's internet service or email provider, despite a request from NARA to do so.  *See* Ex. 1; *see also* Ex. 5 at 2 (letter from NARA asking the State Department to "inquire with the internet service or email provider of former Secretary Clinton, and also of former Secretary Powell, with regard to whether it is still possible to retrieve the email records that may still be present on their servers").

6.      Under Secretary Kennedy justified the failure to recover the email records directly from Secretary Powell's internet service or email provider by claiming that the State Department does not have the legal authority to "make a request for someone else's records from their provider.  That request has to be made by them[.]"  Ex. 1 at 2.

7.      The email records at issue are federal records, however, and belong to the State Department, not Secretary Powell—an understanding that Under Secretary Kennedy himself has communicated to State Department personnel.  *See* Mem. from Patrick F. Kennedy, Under Sec'y of State for Mgmt., re: Senior Officials' Records Management Responsibilities, at 2 (Aug. 28, 2014), *available at* http://coainst.org/2dGKWrB ("All records generated by Senior Officials belong to the Department of State."); *see also* 5 FAM 415.1 (Sept. 17, 2004) (distinguishing record from non-record material, and personal from departmental material).

8.      By letter, dated October 12, 2016, CoA Institute wrote to Defendants Ferriero and Kerry to explain that the federal records at issue had been unlawfully removed, as defined under the FRA, because Secretary Powell never turned them over after his departure from the agency and no other copies had ever been archived to State Department recordkeeping systems.  *See* Exs. 6–7.  CoA Institute further explained that both the Secretary of State and the Archivist had the legal right and a nondiscretionary obligation under the FRA to initiate action through the Attorney General for the recovery of the unlawfully removed records.  *Id.*

9.      The October 12, 2016 letters also made requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for, *inter alia*, all email records created or received on Secretary Powell's private email accounts and for all records relating to Defendants' efforts to recover those email records.  *Id.*

4

10.     To date, neither Defendant has provided a response to CoA Institute's October 12, 2016 correspondence, nor have Defendants or their agencies publicly acknowledged any ongoing efforts to retrieve or recover the email records created and received in Secretary Powell's private email account.

## JURISDICTION AND VENUE

11.     Jurisdiction is asserted under 28 U.S.C. § 1331 (action arising under the laws of the United States); 5 U.S.C. §§ 701, 702, 706 (Administrative Procedure Act); and 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act).

12.     Venue is proper under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## PARTIES

13.     CoA Institute is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair.  In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability.  CoA Institute regularly requests access under the FOIA to the public records of federal agencies, entities, and offices, and it disseminates its findings, analysis, and commentary to the general public.

14.     Defendant John F. Kerry is the United States Secretary of State.  As an agency head, Defendant Kerry is subject to various obligations under the FRA with respect to the maintenance and recovery of federal records.  His principal place of business is the State Department, which is located at 2201 C Street N.W., Washington, D.C. 20520.  Defendant Kerry is being sued in his official capacity.

15.     Defendant David S. Ferriero is the Archivist of the United States.  As Archivist, Defendant Ferriero is subject to various obligations under the FRA with respect to the

maintenance and recovery of federal records.  His principal place of business is NARA, which is located at 8601 Adelphi Road, College Park, MD 20740.  Defendant Ferriero is being sued in his official capacity.

## FACTS

### A.      The Statutory and Regulatory Framework

16.      The FRA refers to the collection of statutes and regulations that govern the creation, management, and disposal of the records of federal agencies.  *See* 44 U.S.C. chs. 21, 29, 31, 33; 36 C.F.R. pts. 1220–39.

17.      The FRA was enacted to ensure the "[a]ccurate and complete documentation of the policies and transactions of the Federal Government," and the "[j]udicious preservation and disposal of records."  44 U.S.C. § 2902(1), (5).  It "establish[es] a unified system for handling the 'life cycle' of federal records—covering their creation, maintenance and use, and eventually their disposal by either destruction or deposit for preservation."  *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 36 (D.C. Cir. 1983).

18.      During Secretary Powell's tenure at the State Department, the FRA defined a "record" as any material, "regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them[.]" 44 U.S.C. § 3301 (2000); *see also* 36 C.F.R. § 1220.18 (2000).[1]

---

[1] The current FRA definition of "record" is nearly identical to the one in force during Secretary Powell's time at the State Department.  *See* 44 U.S.C. § 3301(a)(1)(A) (defining a record as "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence

19.     The FRA requires an agency head—such as Defendant Kerry currently and Secretary Powell during his tenure—to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." 44 U.S.C. § 3102.

20.     The FRA prohibits unauthorized alienation or destruction of records, *id.* § 3314, as well as the unlawful removal of records from the legal custody of an agency.  *Id.* §§ 2905(a); 3105–06; 36 C.F.R. §§ 1222.24(a)(6), 1230.3(b), 1230.10(a).[2]

21.     The FRA directs an agency head to establish "safeguards" against the removal or loss of records, including notifications to agency officials and employees that records are not to be alienated or destroyed unless authorized and of "the penalties provided by law for the unlawful removal or destruction of records." 44 U.S.C. § 3105; *see also* 36 C.F.R. § 1230.10 (agency heads must "[p]revent the unlawful or accidental removal, defacing, alteration, or destruction of records").

22.     The Archivist is responsible for assisting agencies in maintaining satisfactory documentation of policies and transactions, as well as promulgating standards, procedures, and guidelines with respect to records management.  44 U.S.C. § 2904.

23.     The FRA mandates that "[t]he head of each Federal agency" should promptly "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency[.]" 44 U.S.C. § 3106(a); *see also* 36 C.F.R. § 1230.14 (providing that "[t]he agency must

_____

of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]").

[2] The FRA and NARA regulations similarly prohibited unlawful alienation, destruction, or unauthorized removal of federal records during Secretary Powell's tenure at the State Department.  *See* 44 U.S.C. §§ 3105–06 (2000); 36 C.F.R. §§ 1228.100 (2000).

report promptly any unlawful or accidental removal . . . to [NARA]" and outlining the content of such a report).

24.     The FRA also requires an agency head, with the assistance of the Archivist, to "initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency." 44 U.S.C. § 3106(a).

25.     The FRA provides further that, if an agency head does "not initiate an action for such recovery or other redress within a reasonable period of time after being notified of such unlawful action . . . , the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b); *see also id*. § 2905(a) ("The Archivist shall . . . assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law.  In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.").

26.     The obligation to initiate action through the Attorney General to recover unlawfully removed records is a mandatory obligation, not subject to agency discretion. *Armstrong v. Bush*, 924 F.2d 282, 294–96 (D.C. Cir. 1991).

## B.     State Department Guidance Concerning Federal Records

27.     In 1995, NARA clarified that "[m]essages created or received on electronic mail systems may meet the definition of a record." 36 C.F.R. § 1222.34(e) (2000).

8

28.     In the same year, the State Department updated its Foreign Affairs Manual, in relevant part, to explain that "E-mail messages are records when they meet the definition of records in the Federal Records Act."  5 FAM 443.2(a) (Oct. 30, 1995).

29.     With respect to the preservation of email records, the State Department instructed its employees that "[u]ntil technology allowing archival capabilities for long-term electronic storage and retrieval of E-mail messages is available and installed, those messages warranting preservation as records . . . must be printed out and filed with related records."  5 FAM 443.3 (Oct. 30, 1995).

30.     In 2004, the State Department amended the Foreign Affairs Manual to clarify that "[c]orrespondence or email sent or received as a Department official is not personal."  5 FAM 415.1 (Sept. 17, 2004).  It also explained that: "All Department employees are: (1) Required by law to preserve documentary materials meeting the definition of a record under the Federal Records Act . . . [and] (2) Responsible for creating, using, maintaining, preserving, and disposing of the Department's information and records in accordance with 5 FAM 400 and 5 FAH-4[.]"  5 FAM 414.8 (Sept. 17, 2004).

31.     State Department policy has long required that every departing employee sign a separation statement (*i.e.*, Form DS-109), indicating that they had surrendered "all unclassified documents and papers relating to the official business of the Government acquired . . . while in the employ of the Department."  5 FAM 413.9 (Oct. 30, 1995) (FAM provision in force during Secretary Powell's tenure at the State Department); *see also* 5 FAM 414.7 (June 19, 2015) (current DS-109 requirement); 12 FAM 564.4 (July 10, 2015).

32.     The State Department has not uniformly enforced the DS-109 requirement, and Secretary Powell never signed a DS-109 upon leaving the State Department.  *See* State OIG Report at 17.

### C.     Secretary Powell's Email Records Were Unlawfully Removed from the State Department

33.     While serving as the Secretary of State, Colin Powell was the "agency head" of the State Department as defined by the FRA.

34.     All of Secretary Powell's work-related email created or received on any personal email account are federal records as defined by the FRA and should have been designated for permanent preservation.  *See* Dep't of State Records Schedule, Chapter 01: Secretary of State, *available at* http://coainst.org/2dXYH47 (providing for permanent preservation of all correspondence (electronic or otherwise), briefing books, notes, agendas, memos, drafts, minutes, reports, talking points, and other such documentation relating to the Secretary of State's diplomatic activities, appearances, briefings, speeches, travel, telephone calls, scheduling, staff meetings, and other matters relating to the responsibilities of the Secretary of State); Ex. 2 at 1–2 (Under Secretary Kennedy explaining that "diverse Department records are subject to various disposition schedules, with most Secretary of State records retained permanently").

35.     Upon information and belief, Secretary Powell was not authorized under the FRA or any other federal law to use a private email account for State Department business and, in any event, was not authorized to store work-related email records exclusively in a private email account.

36.     Secretary Powell did not contemporaneously save electronic copies of his work-related email records to an official State Department recordkeeping system, nor did he print hard

copies of such records and file those copies in an official State Department recordkeeping system.  *See* State OIG Report at 21.

37.     Secretary Powell did not provide copies, either in electronic or hard-copy format, of work-related email records from any personal email account to the State Department upon his departure from the agency.  *Id.*

38.     Secretary Powell, both individually and by and through his representative(s), has failed to respond to State Department requests that he retrieve or recover his work-related email records from his private email account or, alternatively, contact his internet service or email provider to do so.  *See* Ex. 1; Ex. 4 at 4.

39.     Secretary Powell's use of a personal email account to conduct government business without archiving or saving his work-related email to official State Department recordkeeping systems and without turning those email records over to the agency upon his departure constitutes unlawful removal of those federal records under the FRA.  *See* 36 C.F.R. § 1230.3(b) (defining unlawful removal of records as "selling, donating, loaning, transferring, stealing, *or otherwise allowing* a record to leave the custody of a Federal agency without the permission of the Archivist of the United States") (emphasis added).[3]

40.     The State Department Office of Inspector General has reported that "Secretary Powell should have surrendered all emails sent from or received in his personal account that related to Department business.  Because he did not do so at the time that he departed government service or at any time thereafter, Secretary Powell did not comply with Department policies that were implemented in accordance with the [FRA]."  State OIG Report at 22.

---

[3] During Secretary Powell's tenure at the State Department, NARA regulations did not provide a unique definition of unlawful removal, but rather cross-referenced a statute criminalizing the concealment, removal, or mutilation of records generally.  *See* 36 C.F.R. § 1222.20(b)(9) (2000); *see also* 18 U.S.C. § 2071 (2000).

41.     Under Secretary Kennedy reiterated these conclusions by testifying that the State Department had not retrieved or recovered the work-related email records from Secretary Powell or his internet service or email provider.  *See* Ex. 1.

**D.      Defendants Kerry and Ferriero Have Failed to Execute Their Nondiscretionary Statutory Obligation to Initiate Action through the Attorney General to Recover the Unlawfully Removed Records at Issue**

42.     The FRA requires Defendants Ferriero and Kerry to initiate action through the Attorney General for the recovery of all federal records that they know have been unlawfully removed from State Department custody.  44 U.S.C. §§ 2905(a), 3106.

43.     As described above, Secretary Powell's work-related emails are federal records that have been unlawfully removed from State Department custody.  *See* ¶¶ 33–41.

44.     Defendant Kerry and his agency have had actual knowledge of the unlawful removal of Secretary Powell's work-related email records since at least October 28, 2014.  *See* Ex. 8; State OIG Report at 17–18 n.75.

45.     By letter, dated November 12, 2014, Under Secretary Kennedy wrote to request that Secretary Powell provide the State Department with copies of any and all federal records in his possession or control, including any "email sent or received on a personal email account while serving as Secretary of State."  Ex. 2.

46.     Secretary Powell did not return any records to the State Department in response to the November 12, 2014 request.  *See* Exs. 1, 8.

47.     Neither Defendant Kerry nor his agency has made any direct attempt to recover Secretary Powell's work-related email records other than by asking Secretary Powell, after he was no longer a federal employee, to make that effort.  *See* Exs. 1, 3, 4 at 4.

48.     At the latest, Defendant Ferriero and his agency became aware of the unlawful removal of Secretary Powell's work-related email records in March 2015 when *The New York*

*Times* published an article "regarding the potential alienation of Federal email records created or received by former Secretary of State Hillary Rodham Clinton" and her predecessors "dating back to Secretary Madeleine K. Albright." Ex. 9 (letter from NARA to the State Department discussing *The New York Times* article and its FRA implications); *see also* Michael S. Schmidt, *Hilary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules*, N.Y. Times, Mar. 2, 2015, http://nyti.ms/2dytdjM.

49.     In light of Secretary Powell's failure to turn over, retrieve, or recover State Department records from his personal email account, by letter, dated July 2, 2015, NARA directed the State Department to "inquire with Secretary Powell's 'internet or email provider' to determine whether it is still possible to retrieve the email records that might remain on its servers." Ex. 5 at 2.

50.     The State Department chose not to contact Secretary Powell's internet service or email provider directly. Instead, by letter, dated October 21, 2015, the agency requested Secretary Powell's representative to "check with the internet service or email provider . . . to see if it is still possible to retrieve any official emails[.]" Ex. 3.

51.     Upon information and belief, neither Secretary Powell nor his representative responded to the State Department's October 21, 2015 letter. *See* Exs. 1, 4 at 4.

52.     Under Secretary Kennedy testified that the State Department did not recover the email records directly from Secretary Powell's internet service or email provider, as requested by NARA, because he did not believe the agency had the legal authority to do so. *See supra* ¶¶ 5–6; Ex. 1.

53.     Under Secretary Kennedy's understanding is incorrect because the FRA grants Defendants the right—and imposes upon them the obligation—to initiate action through the

Attorney General for the recovery of all records unlawfully removed from the custody of the agency.  44 U.S.C. §§ 2905(a), 3106.

54.     As both Defendants and their respective agencies have failed through their own actions to recover the unlawfully removed federal records at issue, Defendants must now act through the Attorney General to recover those records.  *Id.*

55.     Upon information and belief, despite Defendants' statutory obligations and actual knowledge of the unlawful removal of the federal records at issue, neither Defendant has initiated action through the Attorney General for the recovery of those records.

   E.     **Defendants' Failure to Recover Secretary Powell's Email Records Has Harmed CoA Institute**

56.     By letter, dated October 12, 2016, CoA Institute notified both Defendants of the unlawful removal of the records at issue and asked that Defendants fulfill their statutory obligations to initiate action through the Attorney General for the recovery of the unlawfully removed records.  Exs. 6–7.

57.     CoA Institute also has a pending FOIA request at the State Department for, *inter alia*, "[a]ll State Department records created or received by Secretary Powell on any personal email account" from "January 20, 2001 to January 26, 2005."  Ex. 6 at 6.

58.     The State Department is unable to process CoA Institute's FOIA request, and CoA Institute is unable to access records to which it has a statutory right under the FOIA, because of Defendants' failure to recover the unlawfully removed records at issue in this case. Defendants' failure to initiate action through the Attorney General for the recovery of the unlawfully removed records is accordingly a direct harm to CoA Institute.

59.     In light of the foregoing, CoA Institute is entitled to bring an action to compel Defendants to initiate action through the Attorney General for the recovery all federal records unlawfully removed by Secretary Powell.  *Armstrong*, 924 F.2d at 924-26.

## CLAIM FOR RELIEF

60.     CoA Institute repeats paragraphs 1–59.

61.     Injunctive relief is proper when, as here, private parties are adversely affected or aggrieved by agency action or inaction and the court is authorized to compel agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. §§ 702, 706(1).

62.     The FRA requires Defendant Kerry, as agency head, to notify Defendant Ferriero, as Archivist, of Secretary Powell's unlawful removal of records and, with the assistance of the Archivist, to initiate action through the Attorney General for the recovery of those records.  44 U.S.C. § 3106(a).

63.     The FRA requires Defendant Ferriero to assist Defendant Kerry "in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law."  *Id*. § 2905(a).  If Defendant Kerry does not initiate that action within a reasonable time, Defendant Ferriero must act independently and request the Attorney General to initiate action for recovery of the unlawfully removed records, and to notify Congress of that request.  *Id*. §§ 2905(a), 3106(b).

64.     Secretary Powell's work-related email records are federal records as defined by the FRA and belong to the State Department.

65.     Secretary Powell's work-related email records have been unlawfully removed from the State Department.

66.     Defendants Ferriero and Kerry have actual and constructive knowledge of the unlawful removal of Secretary Powell's work-related email records.

67.     Defendant Kerry has violated his obligation under 44 U.S.C. § 3106(a) by failing to initiate action through the Attorney General for the recovery of the unlawfully removed records.

68.     Defendant Ferriero has violated his obligation under 44 U.S.C. § 2905(a) and 44 U.S.C. § 3106(b) by failing to request the Attorney General to initiate action for the recovery of the unlawfully removed records and to notify Congress of such request.

69.     CoA Institute is harmed by Defendants' violations of the FRA because the failure to initiate action through the Attorney General for the recovery of the unlawfully removed records at issue means that CoA Institute cannot access agency records to which it has a statutory right under the FOIA.

70.     CoA Institute will continue to be harmed unless and until Defendants initiate action through the Attorney General for the recovery of the unlawfully removed federal records at issue.

71.     Defendants' inaction is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

72.     CoA Institute is entitled to a declaratory judgment that Defendants are in violation of their non-discretionary statutory obligations under the FRA by failing to initiate action through the Attorney General for the recovery of the unlawfully removed federal records at issue and to permanent injunctive relief requiring Defendants to initiate such action through the Attorney General for the recovery of those unlawfully removed federal records.

16

## **RELIEF REQUESTED**

WHEREFORE, CoA Institute respectfully requests this Court:

A.    Declare that Defendant Kerry violated the FRA by his failure to initiate action through the Attorney General for the recovery of the unlawfully removed federal records created and received in Secretary Powell's private email account;

B.    Declare that Defendant Ferriero violated the FRA by his failure to request the Attorney General to initiate action for the recovery of the unlawfully removed federal records created and received in Secretary Powell's private email account and to notify Congress of that request;

C.    Declare these failures by Defendants to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

D.    Order Defendant Kerry to comply with his obligation under 44 U.S.C. § 3106(a) by initiating action through the Attorney General for the recovery of the unlawfully removed federal records created and received in Secretary Powell's private email account;

E.    Order Defendant Ferriero to comply with his obligation under 44 U.S.C. §§ 2905(a), 3106(b) to request the Attorney General to initiate action for the recovery of the unlawfully removed federal records created and received in Secretary Powell's private email account, and to notify Congress of that request;

F.    Award CoA Institute its costs and reasonable attorney fees incurred in this action; and,

G.    Grant such other relief as the Court may deem just and proper.

Dated:  October 26, 2016                    Respectfully submitted,

                                            */s/ John J. Vecchione*
                                            John J. Vecchione
                                            D.C. Bar No. 431764
                                            Lee A. Steven
                                            D.C. Bar No. 468543
                                            Ryan P. Mulvey
                                            D.C. Bar No. 1024362
                                            R. James Valvo III
                                            D.C. Bar No. 1017390

                                            CAUSE OF ACTION INSTITUTE
                                            1875 Eye Street, N.W., Suite 800
                                            Washington, D.C. 20006
                                            Telephone: (202) 499-4232
                                            Facsimile: (202) 330-5842
                                            john.vecchione@causeofaction.org
                                            lee.steven@causeofaction.org
                                            ryan.mulvey@causeofaction.org
                                            james.valvo@causeofaction.org

                                            *Counsel for Cause of Action Institute*