**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
CAUSE OF ACTION INSTITUTE,      )
)
        Plaintiff,          )
)
      v.             )
)     Civil Action No. 16-002145 (TSC)
REX W. TILLERSON,        )
in his official capacity as      )
Secretary of State of the United States,  )
)
       and         )
)
DAVID S. FERRIERO,       )
in his official capacity as      )
Archivist of the United States,    )
)
      Defendants.      )
_____)


## <u>MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND.............................................................. 2

FACTUAL BACKGROUND....................................................................................................... 4

STANDARD OF REVIEW ........................................................................................................ 8

ARGUMENT .............................................................................................................................. 8

I.      The Court Has Subject Matter Jurisdiction........................................................................ 9

        A.      Defendants Have Mandatory, Non-Discretionary Obligations under the
                FRA to Initiate Action through the Attorney General for the Recovery of
                Unlawfully Removed Records .................................................................................9

        B.      CoA Institute Satisfies Article III Standing Requirements....................................12

II.     The Factual Claim that Secretary Powell's Email Records Are No Longer in
        AOL's System Is Hearsay and, in Any Event, Does Not Establish that the Email
        Records Cannot Be Recovered ....................................................................................... 17

CONCLUSION.......................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Friends Service Committee v. Webster*,
   720 F.2d 29 (D.C. Cir. 1983) ................................................................................2

*American National Insurance Co. v. Federal Deposit Insurance Corp.*,
   642 F.3d 1137 (D.C. Cir. 2011) ...........................................................................8

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) ...............................................................4, 10, 15

*Armstrong v. Executive Office of the President*,
   810 F. Supp. 335 (D.D.C. 1993) .........................................................................11

*Citizens for Responsibility & Ethics in Washington v.
   Department of Homeland Security*, 592 F. Supp. 2d 111 (D.D.C. 2009) ....................... *passim*

*Citizens for Responsibility & Ethics in Washington v.
   Executive Office of President*, 587 F. Supp. 2d 48 (D.D.C. 2008) .........................................13

*Citizens for Responsibility & Ethics in Washington v.
   Securities & Exchange Commission*, 858 F. Supp. 2d 51 (D.D.C. 2012).........................12, 14

*Citizens for Responsibility & Ethics in Washington v. Cheney*,
   593 F. Supp. 2d 194 (D.D.C. 2009) .......................................................................13

*Citizens for Responsibility & Ethics in Washington v. Department of Education*,
   538 F. Supp. 2d 24 (D.D.C. 2008) .........................................................................13

*Competitive Enterprise Institute v. Environmental Protection Agency*,
   67 F. Supp. 3d 23 (D.D.C. 2014) .........................................................................11

*Competitive Enterprise Institute v. Office of Science & Technology Policy*,
   82 F. Supp. 3d 228 (D.D.C. 2015) .........................................................................11

*Gilmore v. Palestinian Interim Self-Government Authority*,
   53 F. Supp. 3d 191 (D.D.C. 2014) .........................................................................19

*Gilmore v. Palestinian Interim Self-Government Authority*,
   843 F.3d 958 (D.C. Cir. 2016) .........................................................................21

*Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Administration*,
   402 F.3d 1249 (D.C. Cir. 2005) ...........................................................................8

*Judicial Watch, Inc. v. Kerry*,
    844 F.3d 952 (D.C. Cir. 2016) ...................................................................... *passim*

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980) ...................................................................................9

*In re Korean Air Lines Disaster*,
    932 F.2d 1475 (D.C. Cir. 1991) ................................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................12

*Estate of Parsons v. Palestinian Authority*,
    651 F.3d 118 (D.C. Cir. 2011) ..................................................................22

*Scolaro v. District of Columbia Board of Elections & Ethics*,
    104 F. Supp. 2d 18 (D.D.C. 2000) ..............................................................8

*United States v. American Telephone & Telegraph Co.*,
    498 F. Supp. 353 (D.D.C. 1980) ................................................................20

*United States v. El-Mezain*,
    664 F.3d 467 (5th Cir. 2011) .....................................................................20

*US Ecology, Inc. v. Department of the Interior*,
    231 F.3d 20 (D.C. Cir. 2000) ......................................................................8

**Statutes**

5 U.S.C. § 702 ........................................................................................14

44 U.S.C. § 2902(1) ...................................................................................2

44 U.S.C. § 2902(5) ...................................................................................2

44 U.S.C. § 2904 .......................................................................................3

44 U.S.C. § 2905(a) ...........................................................................3, 4, 8, 9

44 U.S.C. § 3102 .......................................................................................3

44 U.S.C. § 3105 .......................................................................................3

44 U.S.C. § 3106 ...............................................................................3, 8, 9

44 U.S.C. § 3106(a) ...................................................................................4

44 U.S.C. § 3106(b) ...................................................................................4

44 U.S.C. § 3301 (2000) ............................................................................3

44 U.S.C. § 3301(a) ...................................................................................3

44 U.S.C. § 3303 ........................................................................................3

44 U.S.C. § 3314 ........................................................................................3

National Archives & Records Administration Act of 1984,
    Pub. L. No. 98-497, 98 Stat. 2280 (1984) ...........................................10

**Regulations**

33 C.F.R. § 1226.18 ...................................................................................3

36 C.F.R. § 1220.18 (2000) .......................................................................3

36 C.F.R. § 1222.24(a)(6) ..........................................................................3

36 C.F.R. § 1226.10 ...................................................................................3

36 C.F.R. § 1226.16 ...................................................................................3

36 C.F.R. § 1228.100 (2000) .....................................................................3

36 C.F.R. § 1230.3(b) ..............................................................................3, 4

36 C.F.R. § 1230.10 ...................................................................................3

36 C.F.R. § 1230.10(a) ...............................................................................3

36 C.F.R. § 1230.12 ...................................................................................3

36 C.F.R. § 1230.14 ...................................................................................4

**Rules**

Federal Rule of Evidence 801(c) ..............................................................18

Federal Rule of Evidence 802 ...................................................................18

Federal Rule of Evidence 803(8) ..............................................................19

Federal Rule of Evidence 803(8)(A) .........................................................20

Federal Rule of Evidence 803(8)(B) .........................................................20

Federal Rule of Evidence 805 ...................................................................19

## INTRODUCTION

This case concerns the unlawful removal of an untold number of federal records created and received by former Secretary of State Colin Powell in the course of his official duties. These records, which document an important period in contemporary American history, are maintained on a private email account hosted by a for-profit corporation. They were never saved to the Department of State's ("State Department") official recordkeeping systems during Secretary Powell's tenure, nor did Secretary Powell tender copies of his email records—whether in hard copy or electronic format—to the State Department upon his departure from the agency. Despite repeated admonition from the National Archives and Records Administration ("NARA") to contact Secretary Powell's email provider directly to recover the records, the State Department declined to do so and, to date, has failed to recover the records at issue.

Plaintiff Cause of Action Institute ("CoA Institute") brought this case under the Administrative Procedure Act ("APA") and the Federal Records Act ("FRA") to compel the Secretary of State and the Archivist of the United States (collectively "Defendants") to perform their mandatory, non-discretionary obligations under the FRA to initiate action through the U.S. Attorney General for the recovery of the unlawfully removed records.

Without denying that they have failed to initiate action through the Attorney General or that they have failed to recover the unlawfully removed records by other means, Defendants now move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendants claim that the fulfillment of their mandatory FRA obligations is unlikely to redress CoA Institute's injury and that Plaintiff therefore lacks standing.

In doing so, Defendants ignore the teaching of the recent D.C. Circuit opinion in *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952 (D.C. Cir. 2016), where the D.C. Circuit explicitly rejected the type of argument urged upon the Court here:

> [W]hen records go missing, the *something* required by the statute is a referral to the Attorney General by the agency head and/or the Archivist. Indeed, the remainder of the opinion [in *Armstrong v. Bush*] took pains to stress that the statute "*requires* the agency head and Archivist to take enforcement action" through the Attorney General whenever they became aware of records being unlawfully removed or destroyed. And we said that that those mandatory enforcement provisions "leave *no* discretion [for the agency] to determine which cases to pursue." While we recognized that sometimes an agency might reasonably attempt to recover its records before running to the Attorney General, we never implied that where those initial efforts failed to recover all the missing records (or establish their fatal loss), the agency could simply ignore its referral duty. That reading would flip *Armstrong* on its head and carve out enormous agency discretion from a supposedly mandatory rule. Plainly we understood the statute to rest on a belief that marshalling the law enforcement authority of the United States was a key weapon in assuring record preservation and recovery.

*Id.* at 956 (internal citations omitted) (emphasis in original).

Defendants' argument contradicts the applicable statutory text and binding case law, and therefore must be rejected. Further, the sole evidence upon which Defendants rely to support their motion to dismiss is inadmissible hearsay and, in any event, does not establish Defendants' inability to recover the records at issue. CoA Institute therefore has standing to bring the instant action, and the Court must deny the motion to dismiss.

## STATUTORY AND REGULATORY BACKGROUND

The FRA refers to the collection of statutes and regulations that govern the creation, management, and disposal of the records of federal agencies. 44 U.S.C. chs. 21, 29, 31, 33; 36; C.F.R. pts. 1220–39. It was enacted to ensure the "[a]ccurate and complete documentation of the policies and transactions of the Federal Government" and the "[j]udicious preservation and disposal of records." 44 U.S.C. § 2902(1), (5); *see Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 36 (D.C. Cir. 1983) (The FRA "establish[es] a unified system for handling the 'life cycle' of federal records—covering their creation, maintenance and use, and eventually their disposal by either destruction or deposit for preservation."). At all times relevant to this case, the FRA defined "record" to include any material, "regardless of physical form or characteristics,

made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them[.]" 44 U.S.C. § 3301 (2000); 36 C.F.R. § 1220.18 (2000).[1]

The FRA requires an agency head to "establish and maintain an active, continuing program for the economical and efficient management of the records of [his] agency." 44 U.S.C. § 3102.[2] This entails establishing "safeguards" against the removal or loss of records, including notifications to officials and employees that records may not be alienated or destroyed unless authorized and that "penalties [are] provided by law for the unlawful removal or destruction of records." *Id.* § 3105; 36 C.F.R. §§ 1230.10, 1230.12.[3] To accomplish these goals, the Archivist (through NARA) assists agencies in maintaining documentation of policies and transactions, as well as issuing standards, procedures, and guidelines with respect to records management. 44 U.S.C. § 2904.

The FRA also requires that "[t]he head of each Federal agency" promptly "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration,

---

[1] The current definition of a "record" is nearly identical to the one in force during Secretary Powell's tenure at the State Department. *See* 44 U.S.C. § 3301(a)(1)(A) (defining "record" as "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]").

[2] The FRA provides the "exclusive" procedure for the disposal of federal records. 44 U.S.C. § 3314. With limited exception, disposal must be undertaken according to schedules approved by the Archivist. *Id.* § 3303; *see also* 36 C.F.R. §§ 1226.10, 1226.16 (withdrawal of schedules), 1226.18 (temporary retention of records beyond scheduled period).

[3] The FRA prohibits the unauthorized alienation or destruction of records, 44 U.S.C. § 3314, and the unlawful removal of records from the legal custody of an agency. *Id.* §§ 2905(a), 3105–06; 36 C.F.R. §§ 1222.24(a)(6), 1230.3(b), 1230.10(a). The FRA and NARA regulations similarly prohibited unlawful alienation, destruction, or unauthorized removal of federal records during Secretary Powell's tenure at the State Department. 44 U.S.C. §§ 3105–06 (2000); 36 C.F.R. § 1228.100 (2000).

corruption, deletion, erasure, or other destruction of records in the custody of the agency[.]" *Id.* § 3106(a); 36 C.F.R. § 1230.14. Unlawful removal is defined as "selling, donating, loaning, transferring, stealing, or otherwise allowing a record to leave the custody of a Federal agency without the permission of the Archivist[.]" 36 C.F.R. § 1230.3(b).

In addition to notification, if an agency is unable to recover alienated records, the agency head, with the assistance of the Archivist, "*shall* initiate action *through the Attorney General* for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed[.]" 44 U.S.C. § 3106(a) (emphasis added). If an agency head fails to satisfy this obligation, the Archivist must do so in his stead and "notify the Congress when such a request has been made." 44 U.S.C. §§ 2905(a), 3106(b). This obligation is mandatory and not subject to agency discretion. *See Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991) ("[T]he FRA enforcement provisions leave *no* discretion to determine which cases to pursue[.]"), *rev'd on other grounds sub nom. Armstrong v. Exec. Office of the President*, 90 F.3d 553 (D.C. Cir. 1996) [hereinafter *Armstrong I*].

## FACTUAL BACKGROUND

Colin Powell served as Secretary of State from January 20, 2001 to January 26, 2005. In the course of carrying out his duties, Secretary Powell conducted State Department business on a personal email account. Compl. ¶¶ 2–3 (ECF No. 1). That account was hosted by a private internet and email service provider, AOL, Inc. ("AOL"). Compl. Ex. 1; Defs.' Mem. in Support of Defs.' Mot. to Dismiss at 6 (ECF No. 16) [hereinafter Defs.' Mem.]. Neither electronic nor paper copies of Secretary Powell's work-related email records—which qualify as federal records under the FRA and should have been designated for permanent preservation, Compl. ¶ 34—were ever contemporaneously saved to an official State Department recordkeeping system. Compl.

¶ 36.  Moreover, Secretary Powell failed to provide such copies upon his departure from the agency.  Compl. ¶ 37.[4]

In the wake of the scandal surrounding Secretary Hillary Clinton's unlawful removal of State Department records and her use of a private email server, *see* Compl. ¶ 44, the State Department, by letter, dated November 12, 2014, wrote to Secretary Powell's representative— Ms. Peggy Cifrino—to request that Secretary Powell provide copies of all federal records in his possession or control, including all "email sent or received on a personal email account[.]" Compl. Ex. 2.

Soon after this initial contact, by letter, dated March 3, 2015, NARA wrote to the State Department to express "concern[] that Federal records may have been alienated from . . . official recordkeeping systems."  Compl. Ex. 9.  NARA requested that the State Department report back on the status of Secretary Powell's email, as required under 36 C.F.R. § 1230.14.  Compl. Ex. 9. In response, the State Department indicated that Ms. Cifrino "had advised that . . . . [Secretary Powell] did not retain [his] emails or make printed copies."  Compl. Ex. 8 at 3.

NARA soon recognized that Secretary Powell's unlawful removal of federal records constituted a "major question[] or concern[]" and, in July 2015, requested that the State Department contact AOL directly "with regard to whether it is still possible to retrieve the email records that may still be present on [its] servers."  Compl. Ex. 5.  The State Department refused to do so.  Instead, the agency once again merely asked Ms. Cifrino, "if [she] ha[d] not already

---

[4] Secretary Powell's use of a personal email account to conduct government business without saving work-related email records to an official State Department recordkeeping system, as well as his failure to turn over such records upon his departure from the agency, constitutes unlawful removal of federal records under the FRA and violated State Department policies.  Compl. ¶¶ 39–41.  Although Defendants do not concede the records at issue in this case were unlawfully removed or destroyed, they assume the FRA applies for the purpose of their motion.  *See* Defs.' Mem. at 3 n.1.

done so," to contact AOL and determine whether "it is still possible to retrieve any official emails[.]" Compl. Ex. 3. This second request went unanswered. *See* Compl. Ex. 4 at 4.

NARA again wrote to the State Department on March 14, 2016, stating that NARA's position was "that the Department will need to take additional action to resolve" the issue of Secretary Powell's email. *See* Ex. 2 to Decl. of Ryan P. Mulvey [hereinafter Mulvey Decl.]. NARA reiterated its request that the State Department confirm that Secretary Powell was "following up with [his] internet service provider[.]" *Id.* at 2.

On September 8, 2016, at a hearing before the U.S. House of Representatives Committee on Oversight and Government Reform ("OGR"), then-Under Secretary for Management Patrick F. Kennedy acknowledged the State Department's minimal efforts to recover email records from Secretary Powell's AOL account. Compl. ¶¶ 3–4; Compl. Ex. 1. Indeed, Under Secretary Kennedy admitted that the agency had never directly contacted AOL, despite NARA's request that it do so. Compl. ¶ 5. Under Secretary Kennedy justified the State Department's failure to recover email records directly from AOL by claiming that the agency did not have the legal authority to "make a request for someone else's records from their provider." Compl. Ex. 1 at 2.

Following this testimony, NARA clarified, by letter, dated September 15, 2016, "that, in accordance with the [FRA] at 44 U.S.C. [§] 3106, the [State] Department has authority to seek the recovery of Federal records from outside parties." Mulvey Decl. Ex. 3 at 2. NARA further advised, "[i]f AOL responds that it needs the permission of the email account holder, then the Department can request such permission from Secretary Powell," and if he refuses to cooperate, then the State Department could "request that the Attorney General initiate action to recover the records." *Id.*

On September 26, 2016, for the third time, the State Department wrote to Ms. Cifrino to request that Secretary Powell contact AOL.  Defs.' Mem. Ex. 2.  Two days later, on September 28, 2016, Ms. Cifrino sent an email to the State Department, stating that someone from AOL had informed Ms. Cifrino that someone from AOL's "office" had called "Mr. Andrew Dockham at [OGR] to advise him that there are no emails in the AOL system from General Powell's tenure as Secretary of State."  Mulvey Decl. Ex. 4 at 2.  Ms. Cifrino provided no documentation to support that such a call between AOL and OGR had in fact been made or for her implied claim that AOL did not possess and could not recover Secretary Powell's work-related email records.

By letter, dated November 6, 2016, the State Department wrote to NARA and relayed Ms. Cifrino's alleged representation that "Julie Jacobs, the General Counsel of AOL had informed Secretary Powell's office that the AOL General Counsel's office had advised [OGR] that there are no emails in the AOL system from Former Secretary Powell's tenure as Secretary of State."  Defs.' Mem. Ex. 3.  Gary Stern, General Counsel of NARA, however, had been alerted to Ms. Cifrino's email a month earlier.  *See* Mulvey Decl. Ex. 4 at 1 (email from Mr. Stern dated October 3, 2016).  In forwarding Ms. Cifrino's message to Laurence Brewer, NARA's Chief Records Officer, Mr. Stern appeared surprised that some time *after* AOL had "informed" OGR, the Committee still sent a formal written request to AOL seeking cooperation in recovering Secretary Powell's emails.  *See id.* ("[I]t appears that AOL informed [OGR] of the same thing [*i.e.* there were no Powell emails in the AOL system].  Nonetheless, see attached letter dated September 30 from the Committee to AOL, asking them to search for Powell's emails."); Mulvey Decl. Ex. 5 (September 30, 2016 letter from OGR to AOL).

Prior to the State Department's November 6, 2016 letter to NARA, CoA Institute filed the instant action on October 26, 2016 against Defendants for failure to fulfill their obligation to

initiate action through the Attorney General to recover Secretary Powell's work-related email records and to compel Defendants to carry out their nondiscretionary statutory obligation and to notify Congress of the same.  Compl. ¶ 1.

## STANDARD OF REVIEW

In the face of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Plaintiff CoA Institute bears the burden of establishing jurisdiction by a preponderance of the evidence.  *US Ecology, Inc. v. Dep't of the Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  Nevertheless, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. Fed. Deposit Insurance Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted).  The Court also may "consider such materials outside the pleadings as it deems appropriate to resolve the [jurisdictional] question[.]"  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

Defendants move to dismiss this case for lack of subject matter jurisdiction on a theory that CoA Institute lacks standing.  They argue that CoA Institute "has not established the likelihood that the relief requested—ordering Defendants under the FRA to involve the Attorney General in recovering the records at issue—would redress Plaintiff's injury."  Defs.' Mem. at 11. This is so, Defendants suggest, because "Secretary Powell and AOL have affirmed that there are no federal records left to be recovered."  Defs.' Mem. at 11.

Defendants' argument is faulty on both the law and the facts.  First, Defendants misread the nature of their mandatory obligations under 44 U.S.C. §§ 2905(a) and 3106 with respect to

the recovery of the unlawfully removed records at issue. Second, their argument relies on inadmissible hearsay: a claim by Secretary Powell's representative, Ms. Cifrino, that an AOL representative, Ms. Jacobs, told Ms. Cifrino that some unknown person in Ms. Jacobs's office had reported to OGR that there are no Powell emails in the AOL system. Any reference to such supposed statement to OGR is hearsay upon which the Court may not rely. Moreover, even assuming the truth of the hearsay, the statement does not establish Defendants' allegation that there are no federal records left to be recovered. Accordingly, the Court must deny Defendants' motion to dismiss and permit the case to proceed.

## I. THE COURT HAS SUBJECT MATTER JURISDICTION

In seeking to dismiss this case, Defendants have ignored the express requirements of the FRA, which mandate that agency heads and the Archivist *shall* initiate action *through the Attorney General* to recover unlawfully removed records. 44 U.S.C. §§ 2905(a), 3106. For purposes of Defendant's motion to dismiss, there is no dispute that (1) the records at issue have been unlawfully removed; (2) Defendants have failed to recover those records through their own efforts, and (3) Defendants have not initiated any action through the Attorney General. That leaves Defendants with no further discretion in this matter: they are now required to initiate action through the Attorney General for the recovery of the unlawfully removed records and CoA Institute is entitled to ask this Court to order that remedy.

### A. Defendants Have Mandatory, Non-Discretionary Obligations under the FRA to Initiate Action through the Attorney General for the Recovery of Unlawfully Removed Records

The Supreme Court has held that there is no private right of action under the FRA. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 148–50 (1980). In doing so, however, the Court explained that the FRA establishes "one remedy for the improper removal of a 'record' from the agency. The head of the agency is *required* under 44 U.S.C. § 3106 to

notify the Attorney General if he determines or 'has reason to believe' that records have been improperly removed from the agency. The [Archivist] is *obligated* to assist in such situations." *Id.* at 148 (citing 44 U.S.C. § 2905) (emphasis added).[5] Thus, "[a]t the behest of [an agency head or the Archivist], the Attorney General may bring suit to recover the records." *Id.*

Given the FRA's obligatory enforcement mechanism, the D.C. Circuit has held that a private party—such as CoA Institute—may bring suit under the APA to require an agency head or the Archivist to fulfill their statutory obligations under the FRA to initiate action through the Attorney General for the recovery of unlawfully removed records. *Kerry*, 844 F.3d at 954 ("[T]he [APA] permits a claim 'that an agency failed to take a *discrete* agency action that it is *required to take*.' The recovery provisions of the [FRA] fit that bill because they 'leave [the agency head and Archivist] *no* discretion to determine which cases to pursue.'") (internal citations omitted) (emphasis in original); *Armstrong I*, 924 F.2d at 295–96; *id.* at 297 ("[T]he APA authorizes the district court to entertain a properly pleaded claim that the Archivist or an agency head has breached the statutory duty . . . to recover records unlawfully removed from an agency."); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 592 F. Supp. 2d 111, 122 (D.D.C. 2009) [hereinafter *CREW v. DHS*] (holding that an APA suit is "*the* proper course for a private party to go about enforcing the FRA").[6]

---

[5] The FRA was amended in 1984 to substitute the "Archivist" for the "Administrator of General Services." *See* Nat'l Archives & Records Admin. Act of 1984, Pub. L. No. 98-497, § 103, 98 Stat. 2280, 2283 (1984); *see also Armstrong I*, 924 F.2d at 292 (In the wake of *Kissinger*, "Congress amended the FRA to require the Archivist to ask the Attorney General to sue and to notify Congress if the agency head failed to make a similar request[.]").

[6] The *Armstrong I* court also held that the APA permits a claim that an agency's "recordkeeping guidelines and directive do not adequately describe the material that must be retained as 'records' under the FRA." 924 F.2d at 293. In this respect, Defendants provide an incomplete account of the sort of judicial review available to private parties under the FRA through the APA. *See* Defs.' Mem. at 5.

In cases involving unlawfully removed records, such as the instant matter, a plaintiff submits a well-pleaded claim under the APA for the recovery of such records when the plaintiff satisfies four elements:

- *First*, the plaintiff must allege that the records in question "fall[] under the FRA's definition of federal records." *Armstrong v. Exec. Office of the President*, 810 F. Supp. 335, 340 (D.D.C. 1993), *aff'd in part, rev'd in part*, 1 F.3d 1274 (D.C. Cir. 1993); *see also CREW v. DHS*, 592 F. Supp. 2d at 124.

- *Second*, the plaintiff must allege that the same "records have been unlawfully 'removed' from" an agency. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 82 F. Supp. 3d 228, 236 (D.D.C. 2015), *rev'd on other grounds*, 827 F.3d 145 (D.C. Cir. 2016).

- *Third*, the plaintiff must allege that the agency head, or the Archivist, is or should be aware of the unlawful removal. *CREW v. DHS*, 592 F. Supp. 2d at 122.

- *Fourth*, the plaintiff must allege that those same officials failed to act as prescribed by the FRA by failing to initiate action through the Attorney General. *Competitive Enter. Inst. v. Envtl. Prot. Agency*, 67 F. Supp. 3d 23, 27 n.2 (D.D.C. 2014) (review appropriate where there is "refusal to seek the initiation of an enforcement action by the Attorney General").

In this case, CoA Institute has pleaded all four of these elements: (1) all of Secretary Powell's work-related email records are federal records subject to the FRA, Compl. ¶ 64; (2) those federal records were unlawfully removed from the State Department, Compl. ¶ 65; (3) Defendants had actual and constructive knowledge of their unlawful removal, Compl. ¶ 66;

and, (4) Defendants have not met their obligations under the FRA to initiate action through the Attorney General for the recovery of those federal records. Compl. ¶¶ 67–68.

**B.     CoA Institute Satisfies Article III Standing Requirements**

Defendants do not contest any of the above well-pleaded elements of CoA Institute's claim. Instead, they deny CoA Institute's standing by arguing that Plaintiff failed to "allege that it is "'likely,' as opposed to merely 'speculative,' that [its] injury will be 'redressed by a favorable decision.'" Defs.' Mem. at 12 (citation omitted). Defendants claim that, "if the violation has ceased or been corrected, and no future violation is likely, then there is no injury to be redressed by the Court." Defs. Mem. at 12. This argument ignores that CoA Institute has an ongoing injury and is pursuing the "exact relief" that the *Armstrong I* and *Kerry* courts stated was available in these circumstances. *See also CREW v. DHS*, 592 F. Supp. 2d at 124 ("[O]ne cannot read *Armstrong I* and conclude that court did not believe that a private litigant who otherwise had standing would be unable to pursue such relief for lack of redressability.").

To establish the "irreducible constitutional minimum of standing," CoA Institute must demonstrate that it has (1) "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particular and (b) 'actual or imminent'"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that it is "'likely, as opposed to merely speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

CoA Institute meets each of these prongs. The injury at issue is the inability of CoA Institute to access records to which it has a statutory right under the Freedom of Information Act ("FOIA"). *See* Compl. ¶ 69. Such impaired access to records is a cognizable injury sufficient to establish standing under the FRA. For example, in *Citizens for Responsibility & Ethics in Washington v. Securities & Exchange Commission*, the plaintiff established injury-in-fact

because its pleadings demonstrated that it had "at least one pending FOIA request" and "[b]ecause Defendants' search for records in response to [plaintiff's] request is very likely compromised by the admitted [FRA violation]." 858 F. Supp. 2d 51, 59 (D.D.C. 2012) [hereinafter *CREW v. SEC*]. Other district courts in this Circuit have reached a similar result. *See Citizens for Responsibility & Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 228 (D.D.C. 2009) (finding injury where plaintiff filed "FOIA requests . . . [and] demonstrated . . . a real risk that records will not be available to them") (citation omitted); *CREW v. DHS*, 592 F. Supp. 2d at 123 ("Plaintiff's pending unfulfilled FOIA request provides the ongoing injury needed for standing."); *Citizens for Responsibility & Ethics in Wash. v. Exec. Office of President*, 587 F. Supp. 2d 48, 61 (D.D.C. 2008) (finding injury to sustain FRA claim where plaintiff alleged "that unless the deleted [records] are restored under FRA enforcement scheme, they will not be able to obtain these federal records through their pending and future [FOIA] requests"). Injury in a case such as this one, therefore, results from a plaintiff's inability to access federal records to which it has a statutory right (*e.g*., under the FOIA).

The causation element is met where the inability to access the records is traceable or causally connected to an FRA violation (such as, in this case, the unlawful removal of records and the failure to recover those records). *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Educ.*, 538 F. Supp. 2d 24, 28-30 (D.D.C. 2008) (plaintiff unable to establish standing because the alleged noncompliance with the FRA was not traceable to any inability to secure records under FOIA: "The injury cannot be traced to Education's e-mail policy."); *CREW v. SEC*, 858 F. Supp. 2d at 60 (standing established "[b]ecause Plaintiff's injury includes outstanding FOIA requests that involve documents that likely will be unavailable due to the challenged policy"); *CREW v. DHS*, 592 F. Supp. 2d at 123 (the defendant agency and Archivist

"alleged Federal Records Act violations contributed to plaintiff's inability to obtain the requested records").  This prong is met in this case because Secretary Powell's unlawful removal of records, coupled with Defendants' failure to execute their statutory obligations to recover the unlawfully removed records, has caused those records to be unavailable under the FOIA. Compl. ¶¶ 67–69.

Where injury and causation are met in a case involving unlawfully removed records, redressability is met because the court has the power to order the agency and Archivist to execute their statutory obligation to take action through the Attorney General to recover the records.  *See Kerry*, 844 F.3d at 955 ("Appellants sought the only relief provided by the Federal Records Act—an enforcement action through the Attorney General.  But nothing the Department did (either before or after those complaints were filed) gave appellants what they wanted."); *id.* at 956 ("[W]hen records go missing, the *something* required by the statute is a referral to the Attorney General by the agency head and/or the Archivist."); *CREW v. DHS*, 592 F. Supp. 2d at 124 (redressability prong satisfied because *Armstrong I* held "that it was appropriate for a plaintiff whose only injury is denial of records to seek the exact relief sought here").  CoA Institute has adequately alleged it meets that standard here.  *See* Compl. ¶ 70 ("CoA Institute will continue to be harmed unless and until Defendants initiate action through the Attorney General for the recovery of the unlawfully removed federal records at issue."); *see also* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *accord Kerry*, 844 F.3d at 955–56; *CREW v. DHS*, 592 F. Supp. 2d at 122–23; *CREW v. SEC*, 858 F. Supp. 2d at 60.

The straightforward remedy for CoA Institute's concrete and actual injury is for the Court to order Defendants to initiate action through the Attorney General for the recovery of the State Department's unlawfully removed records. *See CREW v. DHS*, 592 F. Supp. 2d at 122 ("[S]uing the Archivist (or the agency head) under the APA to compel him or her to ask the Attorney General to initiate legal action is *the* proper course for a private party to go about enforcing the FRA.") (emphasis in original); *see also Kerry*, 844 F.3d at 953–54 ("[O]ur decision in *Armstrong* made clear that § 3106 encompasses at least a duty to 'ask the Attorney General to initiate legal action.' For present purposes that is enough, as it appears that the judicial relief appellants now seek is an order requiring the current Secretary and the Archivist to do just that.") (internal citation omitted). The availability of this relief is hardly "speculative" as it is entirely within the power of this Court to grant it, and there should be no reason to doubt that Defendants would comply.

Moreover, on this point, the *Armstrong I* court could not have been clearer as to why the court-ordered remedy was proper: initiating action through the Attorney General is mandatory and "leave[s] *no* discretion to determine which cases to pursue[.]" 924 F.2d at 295. "In contrast to a statute that merely *authorizes* an agency to take enforcement action as it deems necessary, the FRA *requires* the agency head and Archivist to take enforcement action."[7] *Id.* (emphasis in orginal); *see also id.* ("[I]t would not be inconsistent with *Kissinger* or the FRA to permit judicial review of the agency head's or Archivist's *refusal to seek the initiation of an enforcement action by the Attorney General*.") (emphasis added). Likewise, the *Kerry* court emphasized that the FRA "'*requires* the agency head and Archivist to undertake enforcement action' through the

---

[7] An "enforcement action" includes initiation of action through the Attorney General. *Armstrong I*, 924 F.2d at 296.

Attorney General if those efforts [at recovery] are unsuccessful." 844 F.3d at 954 (citing *Armstrong I*) (emphasis in original).

Although Defendants are not wrong to argue that the FRA permits *initial* remedial measures at the discretion of agency heads and the Archivist, *see* Defs. Mem. at 4; *Kerry,* 844 F.3d at 954, when those efforts, as here, prove fruitless, the obligation to initiate action through the Attorney General is triggered. *Kerry*, 844 F.3d at 954–55. Indeed, as the *Kerry* court explained, "[e]ven though [Defendants'] efforts bore some fruit, the [State] Department has not explained why shaking the tree harder—e.g., by following the statutory mandate to seek action by the Attorney General—might not bear more still." *Id.* at 955.

In light of the inadmissible representation on which Defendants rely, *see* below Section II, Defendants have failed to provide any evidence to support their contention that the Attorney General would be unable, despite the full force and power of the Department of Justice, to assist Defendants in recovering at least *some* of Secretary Powell's work-related email records. *See Kerry*, 844 F.3d at 956 ("[W]e never implied that where [an agency's] initial efforts failed to recover all the missing records (*or establish their fatal loss*), the agency could simply ignore its referral duty.") (emphasis added); *cf. id.* at 955 ("Absent a showing that the requested enforcement action could not shake loose a few more emails, the case is not moot."). For example, the Federal Bureau of Investigation ("FBI") forensically recovered more than 17,000 email records from Secretary Clinton's private email server that others believed were deleted and unrecoverable. *See* Defs.' Mem. Ex. 1 at 19–20. There is no evidence to suggest that similar forensic techniques could not be used here, even assuming (which has not yet been proven) that Secretary Powell's work-related email records are not accessible from AOL through less intensive means.

To summarize, CoA Institute's ongoing, concrete injury of being unable to access agency records to which it has a statutory right has been caused by Defendants' failure to execute their FRA obligations to recover the unlawfully removed records at issue. CoA Institute is pursuing the precise remedy available to it through the applicable statutory scheme and binding judicial precedent. The time for initial remedial efforts has passed, as Defendants themselves appear to admit. By ordering Defendants to initiate action through the Attorney General, the Court will provide CoA Institute with the only redress available to it. The motion to dismiss accordingly must be denied.

## II. THE FACTUAL CLAIM THAT SECRETARY POWELL'S EMAIL RECORDS ARE NO LONGER IN AOL'S SYSTEM IS HEARSAY AND, IN ANY EVENT, DOES NOT ESTABLISH THAT THE EMAIL RECORDS CANNOT BE RECOVERED

To support their motion to dismiss, Defendants dwell on their past remedial efforts to recover Secretary Powell's email records, which they nevertheless admit have been unsuccessful. Defendants' position is that the initiation of further action through the Attorney General cannot lead to recovery of the records because the emails do not exist in the AOL system. Def. Mem. at 11–14. The two bases for making that claim, however, are a reference to "AOL's current terms of service," Defs.' Mem. at 7 n.3—which do not state what AOL in fact did in this case but only what its rights are with respect to email accounts in general—and a statement by Secretary Powell's representative, Ms. Cifrino—provided not in direct testimony to this Court but reported second-hand in a State Department letter appended as an exhibit to Defendant's memorandum in support of its motion to dismiss. Ms. Cifrino's statement, in turn, relies on what she states is a representation made to her by Ms. Jacobs, the General Counsel of AOL. Ms. Jacobs, in turn, is reported as stating that "her office" called OGR to report that there are no Powell emails in the

AOL system.  *See* Mulvey Decl. Ex. 4 at 2 (Ms. Cifrino's email to the State Department); Defs.'

Mem. Ex. 3 (State Department letter to NARA reporting the contents of Ms. Cifrino's email).

Defendants fail to proffer additional evidence, such as an affidavit from Ms. Jacobs or

another representative of AOL, or a copy of actual correspondence from AOL, to support the

conclusion that (1) Secretary Powell's emails are in fact no longer in AOL's system; (2) even if

the first point is true, AOL is unable to recover the emails by, for example, searching its backup

systems; or, most importantly of all, (3) action through the Attorney General would not result in

the recovery of any federal records through, for example, the same forensic methods used by the

FBI to recover deleted emails from former Secretary Clinton's computer server.

Even Defendants' reliance on the information reported in Ms. Cifrino's email is

misplaced.  They do not supply that email but rely instead on the November 6, 2016 letter from

Under Secretary Kennedy to NARA Chief Records Officer Laurence Brewer, which claims that,

"[o]n September 28, 2016, Secretary Powell's personal representative notified the Department

that Ms. Julie Jacobs, the General Counsel of AOL, had informed Secretary Powell's office that

the AOL General Counsel's office had advised [OGR] that there are no emails in the AOL

system from former Secretary Powell's tenure as Secretary of State."  Defs.' Mem. Ex. 3.  As

this letter contains multiple levels of inadmissible hearsay, the Court should not consider the

alleged facts as proven.[8]  Indeed, Defendants hide behind the November 6, 2016 letter to obscure

the fact that they *never* contacted AOL directly or proffered any evidence from AOL itself to

support the claim that either (1) Secretary Powell's email records are not in AOL's system, or (2)

AOL (or a third party such as the FBI) cannot recover the email through forensic or other means.

---

[8] To the extent necessary, this Court should construe this portion of CoA Institute's opposition as a Motion to Strike the inadmissible hearsay from the record.

Evidence containing hearsay is inadmissible unless it qualifies for an exception. Fed. R. Evid. 802. Hearsay is an out-of-court statement by a declarant offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The November 6, 2016 letter contains multiple levels of hearsay. Defendants offer an unknown declarant's (*i.e.*, someone in AOL's General Counsel office) purported statement to OGR (*i.e.*, that AOL's system does not contain Secretary Powell's email) to prove the truth of the matter asserted. The next level of hearsay is the declarant's (*i.e.*, Ms. Jacobs's) statement to Ms. Cifrino (*i.e.*, that such call to OGR took place). The third level of hearsay is the declarant's (*i.e.*, Ms. Cifrino's) statement in an email to the State Department (*i.e.*, that she received such a call from Ms. Jacobs). Therefore, Under Secretary Kennedy's knowledge of the ultimate truth of the matter (*i.e.*, whether AOL's system contains Secretary Powell's emails) is polluted by three levels of hearsay. Finally, all three of those layers of hearsay are contained in a fourth layer: Under Secretary Kennedy's November 6, 2016 letter to NARA. *See* Defs.' Mem. Ex. 3.

Defendants cannot establish exceptions for all four of these layers of hearsay. *See* Fed. R. Evid. 805 (hearsay-within-hearsay only admissible if an exception applies to each part of the alleged statement). At best, they can establish that the letter from Under Secretary Kennedy to NARA qualifies for the public records exception under Fed. R. Evid. 803(8),[9] but that exception, for the reasons discussed below, does not permit admission of either the unknown declarant or Ms. Jacobs's statement to prove the ultimate truth of the matter upon which Defendants attempt to rely.

---

[9] Fed. R. Evid. 803(8) ("A record or statement of a public office [is exempted from the hearsay rule] if: (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.").

As stated by a court in this district, "Rule 803(8) 'is based on the notion that public records are reliable because there is a lack of . . . motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter.'" *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 204 (D.D.C. 2014) (citation omitted). This exception is applied "in a commonsense manner, subject to the district court's sound exercise of discretion[.]" *In re Korean Air Lines Disaster*, 932 F.2d 1475, 1481 (D.C. Cir. 1991) (citation omitted). Although CoA Institute bears the burden of "prov[ing] the factual finding to be untrustworthy," *United States v. Am. Tel. & Tel. Co.*, 498 F. Supp. 353, 364 (D.D.C. 1980), CoA Institute meets its burden in this instance.

The unknown AOL declarant's alleged statement does not qualify for the public records hearsay exception for the following reasons. First, the unknown declarant is an employee of AOL, not an employee of the State Department, and that person does not participate in that "office's activities." Fed. R. Evid. 803(8)(A)(i). Second, it has not been shown that the unknown declarant was "under a legal duty to report" factual findings concerning the presence of Secretary Powell's emails in AOL's system. *Id.* 803(8)(A)(ii). Third, as a private party who is not an agent of the government, the unknown declarant could hardly be described as a participant in a "legally authorized investigation." *Id.* 803(8)(A)(iii).

Fourth, assuming, *arguendo*, that the unknown declarant's statement met the first prong of the public records exception, it still does not qualify for the exception because "other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). The November 6, 2016 letter does not contain information regarding who the alleged declarant was, when the call to OGR was placed, a transcript or other substantive description of the contents of the call, or how AOL reached its determination. *See United States v. El-Mezain*, 664 F.3d 467, 497–507

(5th Cir. 2011) (holding report inadmissible absent information as to "where or how [declarant] obtained the information," the "circumstances under which the documents were created, the duty of the authors to prepare such documents, [or] the procedures and methods used to reach the stated conclusions"). Further, it is only through CoA Institute supplementing the record by this filing that a copy of Ms. Cifrino's email and the name of the OGR staffer who received the call are available for the Court. *See* Mulvey Decl. Ex. 4 at 2; *see also Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 969 (D.C. Cir. 2016) (ruling that Israel Ministry of Foreign Affairs website pages were inadmissible because they offered "no information explaining who made the findings or how they were made"). That supplementation of the record demonstrates that Ms. Jacobs was not the individual who made the call to OGR, as Ms. Cifrino's email only states that the phone call was made by someone, left unnamed, in Ms. Jacobs's office. Mulvey Decl. Ex. 4 at 2. Perhaps most telling, OGR was sufficiently dissatisfied with the call from AOL that it thereafter sent a request to AOL seeking its cooperation in recovering Secretary Powell's work-related email. *See* Mulvey Decl. Ex. 5; *see also id.* Ex. 4 at 1 (NARA's Chief Records Officer, Mr. Stern, expressing surprise that OGR still sent a formal written request to AOL for Secretary Powell's emails after receiving the AOL phone call).[10]

Ms. Cifrino's statement characterizing Ms. Jacobs's statement and the unknown declarant's statement also does not qualify for the public records exception for the same four reasons outlined above. If anything, as an employee and representative of Secretary Powell, Ms. Cifrino is a *subject* of the State Department's inquiry and a *target* of its remedial efforts to recover Secretary Powell's work-related email records. There also is reason to doubt the

---

[10] Although the date of the phone call from AOL to OGR is unknown, the evidence shows that such a call was made, at the very least, two days *before* OGR sent its follow-up letter to AOL. *Cf.* Mulvey Decl. Ex. 5 (OGR letter to AOL dated September 30, 2016) *with* Mulvey Decl. Ex. 4 at 2 (Ms. Cifrino's email to the State Department dated September 28, 2016).

trustworthiness of Ms. Cifrino's statement with respect to the question of whether Secretary Powell's email records can be recovered in this case. In the version of the email provided to CoA Institute, Ms. Cifrino indicates that she was "informed" by someone from AOL— presumably, Ms. Jacobs, but that information is redacted—that "her office" had called OGR. The specific manner by which AOL contacted Ms. Cifrino and the date on which it happened is unknown, as is the AOL employee who contacted OGR, or when, or why. Thus, the truth of the matter asserted by Ms. Cifrino's email is simply that Ms. Cifrino spoke with Ms. Jacobs about a phone call, made by someone in Ms. Jacobs's office, to OGR, and that it was Ms. Cifrino's understanding that AOL made a representation to OGR that the Powell emails were no longer on the AOL system.

All of the statements made by the unknown declarant, Ms. Jacobs, and Ms. Cifrino accordingly are inadmissible hearsay, and the Court must not rely on them. *Cf. Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 129 (D.C. Cir. 2011) ("To accept the conclusion [of the record] . . . 'would require piling inference (about the reliability and knowledgeability of the statement's author) upon inference (about when the statement was written) upon inference (about the statement's evidentiary basis) akin more to speculation than to reasonable fact-finding.") (internal alterations omitted). Moreover, even if those statements were accepted, none of them answers the question of whether the Powell emails could in fact be recovered in this case because they do not prove, or even allege, that it is impossible for Secretary Powell's email records to be recovered through, for example, forensic means.

If the Government could simply rely on the untested, unsworn letters of non-parties and non-governmental actors to evade its obligations under the FRA, all protections of the statute and Congress's intent would be traduced.

## CONCLUSION

For the foregoing reasons, this Court should find that the statements made by the unknown declarant, Ms. Jacobs, and Ms. Cifrino are inadmissible hearsay, deny Defendants' motion to dismiss, and permit this case to proceed.

Date:  March 13, 2017

Respectfully submitted,

*/s/ John J. Vecchione*
John J. Vecchione
(D.C. Bar No. 431764)
Lee A. Steven
(D.C. Bar No. 468543)
Ryan P. Mulvey
(D.C. Bar No. 1024362)
R. James Valvo III
(D.C. Bar No. 1017390)

CAUSE OF ACTION INSTITUTE
1875 Eye Street, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
john.vecchione@causeofaction.org
lee.steven@causeofaction.org
ryan.mulvey@causeofaction.org
james.valvo@causeofaction.org

*Counsel for Cause of Action Institute*