# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>REX W. TILLERSON, in his official capacity as United States Secretary of State,<br><br>and<br><br>DAVID S. FERRIERO, in his official capacity as Archivist of the United States,<br><br>Defendants. | Case No. 1:16-CV-2145 (TNM) |

## **MEMORANDUM OPINION AND ORDER**

Cause of Action Institute ("Plaintiff" or "Cause of Action") brings this action against the Secretary of State and the Archivist of the United States ("Defendants"), in an attempt to recover former Secretary of State Colin Powell's work-related emails, which he created and received on a personal email account provided by AOL, Inc. ("AOL"). Plaintiff argues that Defendants violated the Federal Records Act, 44 U.S.C. §§ 2101 *et seq.* ("FRA") and the Administrative Procedures Act ("APA") by failing to initiate action through the Attorney General for the recovery of the emails, which constitute federal records improperly removed from the State Department. Plaintiff has a pending Freedom of Information Act ("FOIA") request for the emails, and the injury it alleges is the continuing inability to access the emails due to Defendants' failure to act.

Defendants move to dismiss for lack of standing. They contend that the relief Plaintiff seeks—initiation of action through the Attorney General to recover the emails—is

1

not likely to redress Plaintiff's injury, because Defendants "have no reason to believe that any federal records still exist in former Secretary Powell's private email account." Mem. in Support of Defs.' Mot. Dismiss 1 (hereinafter "Defs.' Mot. Dismiss"). Specifically, Defendants argue that because AOL informed Secretary Powell's personal representative that the email account no longer exists, any further effort will be fruitless. However, because the FRA is premised on leveraging the significant "law enforcement authority of the United States [as] a key weapon in assuring record preservation and recovery," *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016), such investigations have proven capable of revealing even deleted emails, and Defendants' efforts to date have been anemic, I conclude that Plaintiff has carried its burden of showing a substantial likelihood that the requested relief will redress its injury. Accordingly, I deny the motion to dismiss.

## I. BACKGROUND

Colin Powell served as the Secretary of State from January 20, 2001 to January 26, 2005. Compl. 2. During this time period, Secretary Powell "created and received" work-related email on a personal email account. *Id.* Under the FRA and accompanying regulations, those emails constitute federal records, which by law should remain in the custody of the federal government. *See* 44 U.S.C. § 3301 ("'records' . . . includes all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business"); 5 FAM 415.1 (Sept. 17, 2004) ("Correspondence or email sent or received as a [State] Department official is not personal."); Compl. 6-10. The complaint alleges—without dispute—that agency efforts to obtain the emails have been unsuccessful, citing to Congressional testimony and a State Department Inspector General report. Compl. 2-3. When federal records are

2

removed in violation of the FRA, the D.C. Circuit has held that "private litigants may bring suit [under the APA] to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action," *Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991), because the FRA directs specific rather than discretionary action in such a case.

> In contrast to a statute that merely authorizes an agency to take enforcement action as it deems necessary, the FRA *requires* the agency head and Archivist to take enforcement action. . . . Once the Archivist becomes aware of "*any* actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records," the Archivist "*shall* notify the head of [the] Federal agency" involved and "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." 44 U.S.C. § 2905(a) (emphasis added). Similarly, once the agency head becomes aware of "*any* actual, impending, or threatened unlawful, removal, defacing, alteration, or destruction of records," the agency head "*shall* notify the Archivist" and "with the assistance of the Archivist *shall* initiate action through the Attorney General." *Id.* § 3106 (emphasis added). If, however, the agency head does not initiate an enforcement action "within a reasonable period of time," the Archivist "*shall* request the Attorney General to initiate such an action, and *shall* notify the Congress when such a request has been made."

*Id.* at 295–96. Plaintiff has two outstanding FOIA requests with the State Department seeking any of Secretary Powell's work-related emails transacted on a private account. Compl. 4. On this basis, Plaintiff seeks on order requiring the current Secretary of State and the Archivist to initiate enforcement action through the Attorney General.

The Defendants assert that they have "no reason to believe" that the emails still exist. Defs.' Mot. Dismiss 1; Reply 2. As evidence, they explain that:

> [F]ormer Secretary Powell's representative . . . advised State that the private email account former Secretary Powell used during his time in office had been closed for a number of years,

3

> [] former Secretary Powell did not retain or make printed
> copies of the emails . . . and [] the General Counsel of AOL []
> advised the House Committee on Oversight and Government
> Reform that there are no emails in the AOL system from
> former Secretary Powell's tenure as Secretary of State.

Defs.' Mot. Dismiss 13 (citing State Dept. letters claiming the same: Compl. Ex. 3 and Compl. Ex. 8). Defendants rely on these representations for their own conclusion that "there is nothing further to be done in this matter." Reply Ex. 1 (Declaration of Laurence Brewer, Chief Records Officer for the U.S. Government, National Archives and Records Administration) (hereinafter "Brewer Decl.") ("the State Department responded to my letter, stating that the Department was informed by Secretary Powell's representative that no emails remained in the AOL system . . . . I consider this November 6, 2016, letter sufficient to have closed out our request regarding Secretary Powell's email."); Reply 9-10 ("State relied on similar representations from former Secretary Rice's representative and from former Secretary Albright that they did not use a private email account for official business . . . . These representations are not sworn statements admissible as evidence at trial, and [Defendants] are within their discretion to use them as the bases to determine that there is no reason to believe that there are any federal records to be recovered.") (citing the Brewer Decl.).

Through its opposition to the motion to dismiss, Plaintiff then supplemented the record with the actual email sent by former Secretary Powell's personal representative, Ms. Peggy Cifrino. Opp. Ex. 4 at 2; Opp. 21. In the email, dated September 28, 2016, Ms. Cifrino states that a certain someone—the name is redacted, but other records indicate that it

4

was Julie Jacobs, the General Counsel of AOL[1]— "has informed us that her office call[ed] Mr. Andrew Dockham at the House Committee on Oversight and Government Reform [OGR] to advise him that there are no emails in the AOL system from General Powell's tenure as Secretary of State." Opp. Ex. 4 at 2. At least two days after this alleged conversation with the AOL General Counsel's office occurred, on September 30, 2016, the OGR nonetheless sent a letter to AOL seeking the emails. Opp. Ex. 5. However, the Court has no information about what occurred as a result.[2]

On October 26, 2016, approximately one month after Ms. Cifrino's email to the State Department, Cause of Action brought this suit.

## II. LEGAL STANDARDS

"To be heard in federal court, every plaintiff must satisfy the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The Supreme Court articulated the modern standard for redressability in *Defenders of Wildlife*: "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

---

[1] A State Dept. letter dated November 6, 2016, states that the source of Ms. Cifrino's information was "Julie Jacobs, the General Counsel of AOL," who had "informed Secretary Powell's office that the AOL General Counsel's office had advised [OGR] that there are no emails in the AOL system from Former Secretary Powell's tenure as Secretary." Opp. 7 (citing Defs.' Mem. Ex. 3).

[2] The Congressional letter asked that "any federal records within Secretary Powell's accounts, after being reviewed by Secretary Powell and his representatives, be provided to the State Department." Opp. Ex. 5 at 2. At oral argument, Government counsel stated that she was not aware of what resulted from the letter. Tr. of Proceedings 10.

5

decision.'" 504 U.S. at 561 (quoting from *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Standing is assessed "on the facts as they exist when the complaint is filed." *Id.* at 569 n.4. "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 562 (quotation marks and citations omitted). When "speculative inferences are necessary to connect [Plaintiff's] injury to the challenged actions of [Defendants]," the Plaintiff has failed to carry its burden of showing redressability, because Plaintiff has not shown a "substantial likelihood" that the requested relief will remedy its injury. *Simon*, 426 U.S. at 45. Accordingly, to satisfy the "likely" standard set forth by *Defenders of Wildlife*, Plaintiff must demonstrate that there is a "substantial likelihood" that emails will be recovered in an action by the Attorney General, and that the hoped-for redress is not built upon speculative inferences. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Simon*'s "substantial likelihood" language); *Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015) ("[T]he plaintiff must demonstrate redressability, or a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact.'") (citations omitted).

When facing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proof. *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). However, the Court must still "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted). "[T]he district court may

consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### III. ANALYSIS

At bottom, the fundamental question raised by the motion to dismiss is whether Plaintiff has shown a "substantial likelihood" that its injury will be redressed by an order requiring Defendants to initiate action seeking these emails through the Attorney General. *See Defenders of Wildlife*, 504 U.S. at 561; *Simon*, 426 U.S. at 45. Defendants contend that such redress is not likely, because they have "engaged in remedial measures to recover any such records that might still exist, consistent with the administrative scheme of the FRA," and "Defendants now have no reason to believe that any federal records still exist in former Secretary Powell's private email account." Defs.' Mot. Dismiss 1. Defendants rely on their requests to Secretary Powell to find the emails, and the proffer that

> [F]ormer Secretary Powell's representative advised State that the private email account former Secretary Powell used during his time in office had been closed for a number of years, that Secretary Powell did not retain or make printed copies of the emails from this private account, and that there are no emails remaining in the AOL system from former Secretary Powell's tenure as Secretary of State.

*Id.* In response, Plaintiff contends that initiating action through the Attorney General is required by the FRA, and that "the full force and power of the Department of Justice" is likely to "recover[] at least *some* of Secretary Powell's work related emails." Opp. 16 (emphasis in original).[3] For the reasons that follow, I conclude that even if I consider

---

[3] Plaintiffs also contend that referral to the Attorney General will itself constitute redress for the alleged injury, since initiating action through the Attorney General is the remedy

7

Defendants' proffered hearsay, Plaintiff has carried its burden of showing a substantial likelihood of redress.

In assessing the facts of this case, the D.C. Circuit's recent decision in *Judicial Watch v. Kerry* is instructive. 844 F.3d at 953. In *Judicial Watch*, the court considered a very similar case, consolidated from individual suits brought by Judicial Watch and Cause of Action, but this time in search of work emails associated with former Secretary of State Clinton and her private email accounts. *Id.* As in this case, the State Department tried to recover work-related emails by asking Secretary Clinton's intermediaries for assistance. *Id.* at 954. "[U]pon learning that the FBI had taken custody of Clinton's private server and a thumb drive containing electronic copies of the emails she had previously produced, the [State] Department also asked the FBI to provide it with a copy of those records." *Id.* These efforts produced thousands of pages of documents, and the Secretary of State and the Archivist decided not to initiate further action with the Attorney General, prompting two suits seeking that referral. *Id.* The district court dismissed the suits as moot, since the defendants had already made a "sustained effort" to recover the missing emails. *Judicial Watch, Inc. v. Kerry*, 156 F. Supp. 3d 69, 77 (D.D.C. 2016). The D.C. Circuit reversed, reasoning that "[e]ven though [prior] efforts bore some fruit, the Department has not

---

contemplated by the FRA. Opp. 14-15. But Plaintiff's reasoning is mistaken. It is true that the FRA contemplates, and indeed requires, that Defendants ask the Attorney General for help in securing lost federal records. But the Constitution requires Plaintiff to show that "that the *injury* will be redressed by a favorable decision," *Defenders of Wildlife*, 504 U.S. at 561 (citation omitted). Plaintiff itself admits that "inability ... to access records" is the underlying injury, Compl. 12, not inability to secure adequate search efforts. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S. Ct. 1003 (1998). Accordingly, the pertinent question remains whether referral to the Attorney General creates a substantial likelihood that Plaintiff will recover any emails.

explained why shaking the tree harder—e.g., by following the statutory mandate to seek action by the Attorney General—might not bear more still." *Id.* at 955. The court particularly relied upon the fact that although the FBI had custody of Secretary Clinton's private server, other emails had been stored in Secretary Clinton's Blackberry account, and the complaints at issue sought *all* work-related emails. Accordingly, the court found that "[w]hile the case might well also be moot if a referral were pointless (e.g., because no imaginable enforcement action by the Attorney General could lead to recovery of the missing emails), the record here provides no factual support for finding mootness on that basis." *Id.* at 956.

*Judicial Watch* went on to explicitly reject the district court's reasoning. *Id.* Where the district court had found the suits moot because the defendants had already undertaken a "sustained effort," *Judicial Watch* concluded that this interpretation would "flip *Armstrong* on its head and carve out enormous agency discretion from a supposedly mandatory rule," since agencies could then avoid the FRA's mandatory language by simply undertaking a search that that satisfied their own standards. *Id.* (citing *Armstrong*, 924 F.2d at 295). "While we recognized that sometimes an agency might reasonably attempt to recover its records before running to the Attorney General," the D.C. Circuit reasoned, "we never implied that where those initial efforts failed to recover all the missing records (or establish their fatal loss), the agency could simply ignore its referral duty." *Id.*

On remand, the district court again found that the case was moot. *Judicial Watch, Inc. v. Tillerson*, No. CV 15-1068, 2017 WL 5198161, at *7 (D.D.C. Nov. 9, 2017). But the district court reached this conclusion only after the Government submitted supplementary affidavits proving that "the FBI []exhausted all imaginable investigative avenues," including

9

"obtaining personal electronic devices used by the Secretary that might have contained relevant emails," interviewing "individuals who had the most frequent work-related communications with Secretary Clinton, thereby obtaining additional email correspondence," and even submitting grand-jury subpoenas to "RIM, the maker of Blackberry electronic devices; Cingular Wireless and its successor, AT&T wireless, which provided mobile-phone service and thus data access; and the unnamed third-party service provider for Clinton's emails." *Id.* at *7.[4] In response to the subpoenas, all of the private service providers "swore . . . that they retained 'no data' related to the emails." *Id.* at *9. Because "the Attorney General's investigative arm join[ed] Defendants' conclusion that there are no remaining emails for State to recover . . . as part of an investigation related to national security, in which it had every incentive to 'shake the tree' with all its might," the district court reasoned that "[i]t strains credulity" to imagine "that the Attorney General would implement a more exhaustive search in response to a federal-records request." *Id.* at *7.

Of course, the *Judicial Watch* line of cases were decided on mootness grounds, while this case turns on standing. However, the difference is almost inconsequential. "Mootness and standing are related concepts. The Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Garden State Broad. Ltd. P'ship v. F.C.C.*, 996 F.2d 386, 394 (D.C. Cir. 1993) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Both mootness and standing involve the question of redressability. *Id.* at 395 (finding plaintiff's

---

[4] I list these efforts as examples of investigative techniques used in a similar case. I do not mean to suggest that all of these steps would be either necessary or appropriate in the instant case.

10

appeal moot because it "presents no redressable injury."). Accordingly, I consider the D.C. Circuit's opinion in *Judicial Watch* both factually and legally instructive.

Ultimately, three related factors lead me to conclude that there is a "substantial likelihood" that referral to the Attorney General will yield access to at least some of Secretary Powell's emails.

First is the Defendants' lack of effort. Strikingly, they have never once contacted AOL themselves, despite their admitted statutory authority to do so.[5] In fact, the Defendants in this case have exerted significantly less effort than in the first round of *Judicial Watch*, where they were able to rely upon robust investigative efforts in a related matter performed by the FBI, which wields the law enforcement authority of the Attorney General. Here, all they have done has been to ask Secretary Powell to seek the emails himself, and then declare "mission accomplished" when Secretary Powell's representative informed them that AOL believed the emails no longer exist.[6] If AOL were to be contacted directly by the

---

[5] The State Department apparently originally believed it had no such authority, but this misunderstanding has since been corrected. Compl. 4; Tr. of Proceedings 10.

[6] A review of pertinent case law suggests that admissibility—and a focus on reliability—should guide me in assessing whether to rely on evidence outside of the pleadings. A district judge in this Circuit recently held that "when considering a motion to dismiss for lack of subject matter jurisdiction, a court cannot 'rely on conclusory or hearsay statements contained in the affidavits.'" *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 80 (D.D.C. 2016) (citations omitted). The D.C. Circuit has yet to embrace that conclusion, but adopts a consonant rule: "under Rule 12(b)(1), procedural safeguards equivalent to those in Rule 56 [summary judgment] are required, with Rule 56 used selectively as a guide to ensuring fairness." *Gordon v. Nat'l Youth Work All.*, 675 F.2d 356, 360 (D.C. Cir. 1982) (citations omitted). *Gordon* reasoned that under either rule, dismissing over a disputed factual question (in that case, the date that a notice was actually received) without affording procedural safeguards would be error. Here, I can resolve the question of standing without deciding whether to credit Defendants' claims. Defendants essentially ask the Court to rely on the AOL General Counsel's representation made to a House committee, which in turn was relayed to Defendants through former Secretary Powell's personal representative. Even if AOL's representations are accepted as truthful, the Court is still left without any knowledge of how AOL went about researching the question, and the extent to which Secretary Powell's

11

Government, rather than by Secretary Powell's representatives, perhaps they would undertake a more thorough search for Secretary Powell's account, or the servers on which it was stored.

Second, Cause of Action is asking Defendants to bring the significant law enforcement authority of the Attorney General to bear. As the D.C. Circuit explained in *Judicial Watch*, there's a difference between kindly asking records custodians to help, and enlisting the Attorney General's coercive power. *Judicial Watch*, 844 F.3d at 955 (enlisting "action by the Attorney General" constitutes "shaking the tree harder.") The Attorney General wields significant power, and has demonstrated that power in this context with grand-jury subpoenas, interviews with those who frequently exchanged relevant emails, the voluntary collection of "personal electronic devices used by the Secretary," and even a search warrant for a personal computer. *Judicial Watch, Inc.*, 2017 WL 5198161 at *7. As the D.C. Circuit has made clear in both *Armstrong* and *Judicial Watch*, the FRA "rest[s] on a belief that marshalling the law enforcement authority of the United States [is] a key weapon in assuring record preservation and recovery." *Id.* at 956 (D.C. Cir. 2016); *Armstrong*, 924 F.2d at 295 ("Unless the Archivist notifies the agency head (and, if necessary, Congress) and requests the Attorney General to initiate legal action, the administrative enforcement and congressional oversight provisions will not be triggered, and there will be no effective way to prevent the destruction or removal of records."). The Defendants' refusal to turn to the law enforcement authority of the Attorney General is particularly striking in the context of a

---

emails have been permanently erased or perhaps merely deleted. Assuming that the AOL General Counsel's office really did say that no pertinent emails remained in the AOL system, and even assuming that AOL believed that fact to be true, Plaintiff would still have standing.

statute with explicitly mandatory language.[7] *See Armstrong*, 924 F.2d at 295-96 ("[O]nce the agency head becomes aware of '*any* actual . . . removal . . . or destruction of records,' the agency head 'with the assistance of the Archivist *shall* initiate action through the Attorney General.'") (quoting 44 U.S.C. § 3106) (emphasis in *Armstrong*).

Third, action by the Attorney General has yielded fruit before, even when the emails at issue had been deleted. In the investigation into Secretary Clinton's emails, the FBI's forensic techniques revealed over 17,000 emails that others had believed to be deleted or unrecoverable. Defs.' Mem. Ex. 1 at 19-20; *Judicial Watch, Inc.*, 2017 WL 5198161, at *5 (Using forensic searches, "the FBI recovered nearly 17,500 unique pages of emails above and beyond those already submitted by Clinton's team."). It is true that grand jury subpoenas submitted to the service providers in *Judical Watch* yielded "no data." 2017 WL 5198161 at *9. But emails stored by third party service providers may not be the only source at issue. And even if AOL processes have erased Secretary Powell's emails on the AOL servers, a thorough investigation undertaken by the Attorney General might well yield fruit via other avenues.

---

[7] In their Reply, Defendants contend that they are only required to initiate action through the Attorney General if they have "reason to believe" that federal records can be recovered. Reply. 6 ("Under the FRA, an agency's obligation to initiate action through the Attorney General . . . arises only if 'the head of the Federal agency knows or has reason to believe'" that federal records "exist to be recovered.") (citation omitted). But this contention ignores the language of the FRA, which requires referral if "the head of the Federal agency knows or has reason to believe [federal records] *have been unlawfully removed* from that agency," 44 U.S.C. § 3106(a) (emphasis added). It also conflicts with the D.C. Circuit's holding that although "the FRA contemplates that the agency head and Archivist may proceed first [on their own]," ultimately "the decision to seek the initiation of an enforcement action to prevent the destruction or removal of records is not committed by law to the agency head's or Archivist's discretion." *Armstrong*, 924 F.2d at 295, 296 n.12.

In sum, I conclude that there is a substantial likelihood that Plaintiff's requested relief would yield access to at least some of the emails at issue. Accordingly, Plaintiff's injury is redressable, and it has standing to pursue the case further.

## IV. CONCLUSION

For the aforementioned reasons, the Defendants' Motion to Dismiss is hereby **DENIED.**

**SO ORDERED.**

Dated: January 9, 2018

TREVOR N. MCFADDEN
United States District Judge